**People of the State of Illinois, Plaintiff-Appellee, v. Lawrence Myrick, Defendant-Appellant.**

**Gen. No. 52,543.**

First District, Fourth Division.

February 14, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendant, Lawrence Myrick, was indicted for the crime of murder. He waived trial by jury, and after a bench trial was found guilty of the lesser offense of voluntary manslaughter and sentenced to the penitentiary for a term of one to fourteen years. The defendant appeals, contending that he was improperly convicted of manslaughter since he was acting in self-defense when he shot the deceased.

Willie Woodard testified that he was a close friend and co-worker of Herman Stevenson, the deceased. After leaving work at a food mart on September 23, 1966, at about 7:00 p. m., the witness and the deceased went to a restaurant near the intersection of Ogden and Spaulding in Chicago. They later went outside the restaurant and sat around with some other friends. This group consisted of six or seven young men and about eight or nine girls. Between 8:00 and 9:00 p. m., defendant entered the restaurant with a friend. Upon leaving the restaurant, the defendant and his friend came up to Stevenson, and defendant asked Stevenson if he wished to finish a fight the two had about a year previously. The witness did not know defendant but had heard of the fight, and also knew that Stevenson had gone to jail as a result of the previous fight. At first the deceased refused to fight, but then deceased and defendant started fighting. During the fight defendant's friend drew a gun and told everyone to get back. Defendant asked for the gun, but his friend refused to give it to him. At this point, the witness left the scene. He did not witness the shooting, and he did not see a razor in the deceased's hands at anytime during the fight.

Willie Mennis, also a friend of the deceased, testified that he was in the group in front of the restaurant. The defendant and a friend, both unknown to the witness,

■■■■■■

came out of the restaurant, and defendant picked a fight with the deceased. Neither boy had a weapon during the fight, but defendant's friend drew a gun and told everyone to stand back. Defendant stepped away from the deceased and asked his friend for the gun. The friend at first refused, but finally gave the gun to the defendant. Defendant struck the deceased in the stomach and on the back of the head with the butt of the gun, and the deceased swung back with his fist. Defendant then stepped back and shot the deceased. As the witness walked to the restaurant, he heard another shot fired. When the police were called, defendant and his friend fled from the scene.

Officer John Mohan of the Chicago Police Department testified that he was assigned to investigate the death of Herman Stevenson, and that the defendant voluntarily surrendered eight days after the occurrence. Enez Gallion, mother of Herman Stevenson, testified that her son was 16 years of age at the time of his death.

Defendant testified on his own behalf that he and deceased had a fight about a year prior to this occurrence, as a result of which deceased was jailed for six months. On the evening in question he met an acquaintance known to him only as Eddie. They went to a restaurant, and as they were leaving, the deceased asked him if he was ready to finish the fight. Defendant started to leave, but the deceased struck him on the head with his fist. He backed away because the deceased had a razor in his hand, but when Stevenson gave the razor to one of his friends, defendant and deceased began fighting. When defendant started to get the better of the fight, one of the deceased's friends grabbed him around the neck while Stevenson continued to kick and hit him. "Somehow the gun got into his hand" and he shot the deceased, who at the time was about twelve feet from him. Defendant was dizzy and bleeding from the mouth at the time he fired the gun. He also was afraid for his life because of his fear of the deceased and of the other members of the

deceased's gang who were present. He panicked when the police arrived and fled the scene. He surrendered eight days later.

Defendant's sole contention on this appeal is that the trial court erred in not finding that the defendant was justified in the killing under the law of self-defense.

Voluntary manslaughter is defined in part as follows:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

> "(1) The individual killed, . . .

> "Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

> "(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." (Ill Rev Stats 1965, c 38, § 9–2.)

Article 7 of the Code provides in part:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, . . . ." (Ill Rev Stats 1965, c 38, § 7–1.)

■ ■ The credibility of witnesses and the weight to be given their testimony is for the trier of fact and the reviewing court will not substitute its judgment for that of the trial court merely because the evidence is conflicting, unless guilt has not been established beyond a reasonable doubt. People v. Paulson, 80 Ill App2d 44, 225 NE2d 424 (1967); People v. Knox, 94 Ill App2d 36, 236 NE2d 384 (1968).

■ We consider it unnecessary to determine whether defendant's testimony, if uncontroverted, would justify an acquittal under the theory of self-defense, since we find ample evidence to support the finding of guilt in the instant case. The testimony adduced by the State revealed that defendant was the aggressor in renewing a fight with the deceased, that the deceased had no weapon, that during the fight the defendant obtained a gun from an armed friend, and shot the deceased at a time when defendant was in no peril. Defendant argues that the State's evidence was implausible because defendant would not pick a fight when his opponent was accompanied by at least nine friends, nor would he stop the fight to get a weapon at the risk of being assaulted during this interval. We believe that the court could properly find that the testimony of the State's witnesses was more believable than defendant's uncorroborated testimony that "somehow the gun got into his hand" and that he was afraid for his life when the deceased was twelve feet away and unarmed. We do not find the State's evidence so improbable or so implausible as to justify a reasonable doubt as to defendant's guilt. People v. Pena, 72 Ill App 2d 305, 219 NE2d 667 (1966). Defendant also impugns the credibility of the two State's witnesses because they were friends of the deceased. While the friendship between the State's witnesses and the deceased was a factor to be considered by the court in weighing the evidence, such friendship would not destroy their credibility. The trial court had an opportunity to observe all the wit-

nesses, to evaluate their testimony, and specifically found that defendant killed the deceased while acting under an intense passion resulting from serious provocation. We see no reason to disturb its finding.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.