(No. 42598.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* STANLEY MAYS, Appellant.

*Opinion filed April 1, 1971.*

KENNETH L. GILLIS, of GILLIS, GILDEA & RIMLAND, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, ROBERT A. NOVELLE, Assistant State's Attorney, and RICHARD PEZZO-PANE (Senior Law Student), of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Stanley Mays, who was charged with the crimes of rape, deviate sexual assault, and armed robbery, in the circuit court of Cook County, waived his right to a trial by jury, was found guilty of all three charges by the court after a bench trial, and was sentenced to the penitentiary for a minimum of 10 and a maximum of 30 years.

He contends that he should have been afforded an attorney at the identification lineup; that he was prejudiced by the admission of evidence of other wrongdoing by him; and that the evidence did not sustain the finding of his guilt beyond a reasonable doubt.

In resolving the contention that the defendant should have been afforded counsel at the lineup, we have examined and considered the record. It discloses that the victim of the charges had opportunities to observe the face of the man who attacked her for a total of 10 to 15 minutes on at least four occasions during a period of the attack which lasted about one-and-one-half hours. She described the attacker's build, hair texture and complexion, and noted particularly his large eyes and upper lip, which curled slightly over the lower one. Three days after the attack, she identified the defendant's photograph out of approximately 200, which were given her for examination. Later

the same day, she identified the defendant in a lineup of five persons of approximately the same age, height and description and at the trial she made a positive in-court identification.

In *United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, the court held that a pretrial confrontation for identification purposes is a critical stage of a prosecution at which an accused is entitled to the presence of counsel, and that the conduct of such a confrontation by the police without notice to and in the absence of counsel denies an individual his sixth amendment right to the assistance of counsel made binding on the States by the fourteenth amendment. *People* v. *Nelson,* 40 Ill.2d 146, 150.

The record in this case clearly shows that the identifying witness had adequate opportunities, under favorable circumstances, to observe the defendant at the time of the rape, and that the defendant had distinguishing characteristics with reference to his upper lip and eyes. (See: *People* v. *Bey,* 42 Ill.2d 139, 142-144; *People* v. *Speck,* 41 Ill.2d 177, 193.) Consequently, we find that the in-court identification of the defendant by the victim of the rape was based on her observation of him at the time of the offense and was not founded on her view of him in the lineup. Prior to the lineup, she had already identified his photograph out of approximately 200 which were given her for examination.

We acknowledge that the circumstances surrounding a confrontation may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process. (*Stovall* v. *Denno,* 388 U.S. 293, 301, 302, 18 L. Ed. 2d 1199, 1206, 87 Ct. 1967; *People* v. *Nelson,* 40 Ill.2d 146, 150.) However, the evidence clearly shows that the defendant's in-court identification was independent of and uninfluenced by any viewing at the

lineup, and the introduction of evidence pertaining to the lineup constituted harmless error. *People* v. *Lucas, ante,* p. 158.

During the course of the cross-examination of the defendant's mother, the prosecution elicited testimony from her that the defendant had lived with her in March and April of 1968. When the prosecutor pursued examination relative to this statement, she testified that he lived with her during this period, except for 40 days while he was in jail. The prosecutor asserts that he was laying the grounds for her impeachment had she not testified that the defendant did not live with her continually during this time. Such assertion is without merit in that the further questioning did not indicate that the witness had made a prior inconsistent statement and did not direct her attention to the time, place, parties involved, when such statement was made and the substance thereof. (*People* v. *Lenhart,* 340 Ill. 538, 547.) However, we cannot agree that this evidentiary error was so prejudicial as to require reversal.

There was no objection to this testimony at the trial; and, generally, unless evidence is so prejudicial as to clearly deny the defendant a fair trial, the failure to object constitutes a waiver of error in its admission. (*People* v. *Lee,* 44 Ill.2d 161, 171; *People* v. *Trefonas,* 9 Ill.2d 92, 98.) Also, absent the circumstance of evidence being received by the court which is so prejudicial as to clearly deny the defendant a fair trial, an error in the admission of evidence in a trial before the court, rather than before a jury, does not constitute reversible error. The trial judge is presumed to have considered only the competent and relevant evidence. *People* v. *Palmer,* 26 Ill.2d 464, 471; *People* v. *Popescue,* 345 Ill. 142, 155, 156.

The defendant further contends that the finding of guilt by the trial court was unreasonable when the testimony of the complaining witness is compared with that of the nine alibi witnesses; that the testimony of the complaining wit-

ness is not believable; and that her identification is not reliable.

The complaining witness testified that she was returning home from work at approximately 12:50 A.M., on May 18, 1968; that her assailant approached her, put a gun to her head and told her that he would "blow her brains out" if she opened her mouth; that she looked him in the face; and that, while being led down a lighted alley, she again looked him in the face. She further stated that he then led her to a stair landing and took out a knife, which he held in one hand; that he held the gun which he earlier exhibited in the other hand and kept it pointed at her head and side; that he ordered her to take off her clothing and she removed her coat and dress; that he ordered her to climb the stairs, to continue to undress as she did so, and she obeyed; and that by the time she reached the third-floor landing, she was completely naked. During the course of close to an hour and a half, the assailant raped the complaining witness, forced her to perform sexual acts and threatened to stab and kill her. At one time when she thought he was going to stab her, the complaining witness sat up and again observed the assailant's face. He then led her down the stairs and took keys, a wallet, and change from her purse. At this point, she again observed his face. He then fled and she immediately beat on a neighbor's window, related that she had been raped, and sought the police.

The defendant's alibi witnesses consisted of two groups: first, some young companions; second, his mother and some of her friends with whom she had been playing cards. The defendant testified that he was with five other boys from about mid-afternoon until he went to bed, shortly before 1:00 A.M., and that during the course of the evening he and his friends first went to the home of one of the boys and from there to a drive-in restaurant, then to his home, from there to a nearby hotel to make a telephone call, then back to his home again, and again to the drive-in restaurant,

and afterward to his home at shortly after midnight. He stated that thereafter the boys listened to records; that they were doing so when he went to bed shortly before 1:00 A.M.; and that the boys left between 1:00 and 1:30 A.M. The boys testified that the defendant had gone to bed before they left.

There were a number of discrepancies in the testimony of the defendant and his companions, such as one might expect when witnesses are relating a series of events which occurred during an evening. Among the differences was the defendant's story of the telephone call made by the boys from the hotel. He testified that they called a girl but another boy did all of the talking, and that conversation lasted about half an hour. The other boys testified that it was the defendant's girl friend whom they called, and that he did essentially all of the talking. There were also discrepancies in the testimony of the defendant and his friends relative to the places they went on the evening in question, the sequence of the time and the various events of the evening, and concerning members of the defendant's family who were present at his home on the evening in question, and the pants then worn by the defendant.

The other group of alibi witnesses consisted of the defendant's mother and a group of her friends who, every Friday night, played cards in the dining room of the apartment in which the defendant and his mother lived. These witnesses testified that the defendant and his friends came to the apartment between 11:30 P.M. and midnight, and they saw them play records in the living room. The mother further testified that the defendant went to bed around 12:15 or 12:30 A.M. The defendant's bedroom was close to the front door. The guests left between 1:30 and 3:30 A.M., and each testified that when she left the apartment she either saw, or thought she saw, the defendant in bed.

While the variations in the boys' testimony were not

unusual in view of the series of events to which their testimony related, yet it was the function of the trial court to evaluate the conflicting evidence in determining the weight and credibility which it should receive. *People v. Hampton,* 44 Ill.2d 41, 45; *People v. Washington,* 27 Ill.2d 104, 110.

The State points out that the testimony of the defendant's mother and her friends did not definitely place the defendant in the apartment or in the bed during the time of the crime (12 :50 to 2 :20 A.M.). Their testimony, however, did relate to shortly before and shortly after the time of the crime. The trial court was not obligated to believe the alibi testimony over the positive identification testimony of the complaining witness based upon sufficient opportunity to observe her assailant, his build, hair, eyes, lips and other characteristics. Her testimony, if believed, was sufficient to sustain a conviction even though it was in conflict with the suggestion of a far greater number of otherwise uncontradicted alibi witnesses. *People v. Setzke,* 22 Ill.2d 582, 586; *People v. Lamphear,* 6 Ill.2d 346, 356.

The investigating police officer corroborated, in part, the testimony of the complaining witness. Her testimony was credible, and her identification positive. We will not disturb a finding of guilty unless the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the guilt of the defendant. (*People v. Scott,* 38 Ill.2d 302, 306; *People v. Washington,* 27 Ill.2d 104, 110.) The evidence in this record does not warrant our setting aside the findings of the trial court.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*