THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES
A. MOORE, Defendant-Appellant.

(No. 71-376;

Second District—September 11, 1972.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and F. Lawrence Lenz, State's Attorney, of Freeport, (Thomas J. Immel and Fred G. Leach, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The defendant, James Moore, along with Albert Norris and Gary Farrar, was indicted for the offenses of attempted murder, armed robbery and aggravated battery. A jury found him guilty of all three offenses and he was sentenced to the penitentiary. His appeal to the Supreme Court was transferred to this court.

Taken with this case is a motion on behalf of defendant to strike certain portions of the State's brief and an appendix to the brief. We deny this motion.

At approximately 8:55 P.M. on December 12, 1969, two men entered a music store in Freeport, Illinois. The lone clerk, William Muller, testified that at 9:10 he told the men it was closing time; that both men then approached him; one of them came around the counter, pulled out a gun and announced a "stick-up"; that he told them he would give them money and asked not to be shot; that the man with the gun shot him in the mouth; that he was pushed to the back of the store, the men then took money from a desk and fled.

Defendant raises four issues on appeal: (1) a pre-trial lineup, at which Muller identified Moore, was unfairly conducted and tainted the in-court identification of the defendant; (2) testimony regarding an illegally seized gun, even though stricken from the record, was so pre-

judicial that it denied defendant his right to a fair trial; (3) the prosecutor's closing remarks were false and inflammatory; and (4) defendant was not proven guilty beyond a reasonable doubt.

At the trial, Muller identified Moore as the man who shot him. During cross-examination, it was disclosed that Muller had identified defendant at a pre-trial lineup. It was further revealed that, before viewing the lineup of participants, Muller had read the names of the robber suspects in the newspaper and that each participant gave his name before Muller made an identification. Consequently, it is argued that the in-court identification was inadmissible because it was a product of a suggestive and improper pre-trial lineup. See, *People v. McCorry* (1972), 51 Ill.2d 343.

The evidence is contradictory as to whether the participants gave their names at the lineup while Muller was present. The police officer who conducted the lineup testified that there were no witnesses present when the subjects gave their names. Muller also testified that, although each man recited his name, "* * * I had heard the names, but I didn't know which was which—which boy was what name."

■■ Were we to assume that Muller read the names in the paper, that the lineup participants recited their names while Muller was present, and that this constituted an unnecessarily suggestive pre-trial identification procedure, it would not follow, *ipso facto*, that defendant was denied due process.

"* * * [E]ven though an out-of-court procedure may have been unnecessarily suggestive, nonetheless, denial of due process depends on whether * * * identification at trial was dependent on or influenced by the improper viewing and that the question to be determined is whether the witness's identification had an origin independent of the improperly suggestive confrontation." *People v. Martin* (1970), 47 Ill.2d 331, 338.

■■ We hold that the lineup confrontation, even if suggestive did not lead to error because Muller's identification had an origin independent of the lineup. The robbers were in the adequately-lighted store for at least fifteen minutes, during which time Muller viewed them "from time to time." After Muller announced closing, they approached the counter and stood within a few feet of him. When Muller was shot, he was two feet from his assailant. Consequently, his excellent opportunity to view defendant is the independent origin of his lineup identification. See *People v. McCorry*, at pp. 346-347 (several minutes of observation under adequate lighting at a distance of a few feet); *People v. Hudson* (1970), 46 Ill.2d 177, 185 (observation for thirty seconds).

We take cognizance of the fact that no objection was made when Muller made his in-court identification and that defendant did not make any pre-trial motion to suppress identification.

██ Defendant also alleges that the prosecution failed to establish that he was represented by counsel during the pre-trial lineup. We find no merit to this argument since it is undisputed that prior to the lineup the Public Defender was appointed to defend Moore and was present at the lineup. We cannot assume, as defendant requests, that, since this Public Defender later withdrew from the case because he was involved in an attorney-client relationship with William Muller, there is "grave doubt" that he was in fact representing the interests of the defendant at the lineup.

Albert Norris, one of defendant's alleged accomplices, testified for the prosecution and implicated Moore in the crimes. He testified in part that, before the crimes were committed, Farrar took a gun out of his car and gave it to the defendant; that after the robbery defendant gave the gun to Norris who placed it in a trash barrel outside of a tavern. (The police found the gun after searching through the trash barrel.) During direct examination of Norris, a gun was shown to him on two different occasions and, without objection by defense counsel, he identified the gun as the one Farrar gave to defendant which defendant later gave to Norris. After Norris left the stand, the trial judge allowed defendant's motion to suppress the gun as a product of an unlawful search and he later struck Norris' testimony relating to identification of the gun, ordering the jury to disregard that portion of the testimony. Defendant now alleges that the testimony, even though stricken from the record, was so prejudicial that he was denied a fair trial. He relies upon those cases which hold that even if very damaging evidence is struck from the record, the jury still may have been prejudiced by it. See, *e.g., People v. Lehner* (1927), 326 Ill. 216, 221-222.

██ The question of the correctness of the suppression is not before us; however, for several reasons, we find no error. No objection or motion to suppress was made until after the gun had been displayed, Norris had twice identified the weapon and had left the witness stand. Even if the jurors, after the judge's instruction to disregard, improperly considered the gun identification, no prejudice resulted. Muller testified that he was robbed at gun point and shot in the mouth by a person he identified as the defendant. The fact that is important to the charges of armed robbery, attempted murder and aggravated battery in the case at bar is that *a* gun was used and this fact was established through Muller's testimony. The identification of *the* gun was not significant and prejudice could not result if the jury improperly considered it.

Defendant alleges that the prosecutor in his closing argument made false and inflammatory statements designed to prejudice the jury. The remarks concerned the character of two of Moore's alibi witnesses and one of Farrar's alibi witnesses.

"* * * Let's examine the character of some of these witnesses who have testified. Deborah Puckett—Moore's brother—Farrar's brother—do you think that people who jump in and out of hotels and motels without—with companions of the opposite sex have the morals or scruples or fibre—"

The defendant's contention is that these comments constituted prejudicial error because there is no foundation for them in the record. *People v. Snell* (1966), 74 Ill.App.2d 12.

■■ The record discloses that Deborah Puckett and Joseph Moore, defendant's witnesses, who were not married to each other, spent the night of the crime together and that Dwayne Farrar, one of Farrar's witnesses, in company with a girl not his wife, registered at a hotel as husband and wife, eight times in two months. Consequently, there was a foundation in the record for commentary upon the character of these witnesses for impeachment purposes. There was however no evidence of Deborah Puckett and Joseph Moore "jumping in and out of hotels and motels." While this statement should not have been made, no prejudicial error occurred because of it.

■■ Finally, defendant alleges that he was not proven guilty beyond a reasonable doubt. We do not agree. The victim of the crime identified Moore as one of the men who held him up and as the man who shot him. Holding that this identification was, in no way, tainted the positive identification is sufficient to sustain a conviction even if uncontradicted alibi witnesses have testified. *People v. Mays* (1971), 48 Ill.2d 164, 170. Additionally, Moore's accomplice, Norris, implicated him in the crimes.

"It is well established that the testimony of an accomplice, even though it is attended with infirmities such as a promise of leniency, is sufficient to sustain a guilty finding. [Citations omitted.]" *People v. Hudson,* 46 Ill.2d at 190.

Finding no error we affirm the judgment of the lower court.

Judgment affirmed.

ABRAHAMSON and GUILD, JJ., concur.