THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDRÉ NUNEZ, Defendant-Appellant.

(No. 59657;

First District (3rd Division)—November 7, 1974.

164

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Andre Nunez, was indicted for the offense of unlawful use of weapons (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(7)) in that he knowingly possessed a shotgun with a barrel less than 18 inches in length, commonly known as a sawed-off shotgun. After a trial in the circuit court of Cook County, the jury found him guilty as charged. He was sentenced to a term of 2 to 5 years in the penitentiary and he appeals from the conviction.

We vacate and remand with directions.

Defendant, through his appointed counsel, presents four issues for review. He contends that (1) his motion to suppress evidence was erroneously denied, (2) he was not proved guilty beyond a reasonable doubt, (3) he was denied due process of law by the State's suppression of evidence favorable to the defense, and (4) his sentence was excessive. The State opposes the first three of these contentions but concedes that his sentence must be modified in order that it conform to the provisions of the Unified Code of Corrections, now applicable.

On March 1, 1971, at 5:30 A.M., three Chicago police officers went to the apartment of defendant's mother, Ana Nunez. They had an arrest

warrant for her son; however, the record does not show what offense was alleged in the warrant. Officer Green testified that defendant was sleeping in a single bed in a small bedroom of the apartment when they entered. Officer Green leaned on the bed with his hand and told defendant to get up and that he was under arrest. Green felt a hard object under his hand at this time. When defendant had gotten out of bed and while he was standing next to it, Officer Green recovered a sawed-off shotgun from between the box spring and mattress. The weapon was found in approximately the place where defendant's legs would have been if he had been lying in the bed. Examination revealed a live shell in it. The shotgun and shell were admitted in evidence at trial during the prosecution's case-in-chief. Defendant's mother, Ana Nunez, let the police into the apartment and was present in the bedroom during defendant's arrest.

Defendant's mother testified for the defense that on February 25, 1971, she found the weapon abandoned on the stairs leading to her apartment. She testified that she saw two street gangs having a fight in front of her apartment building that afternoon. She further testified that she took the weapon into her apartment and placed it where it was later found by the police. She maintained that she called the police to report the weapon but no one from the police came in response. She claimed that she never told defendant about the gun.

Defendant's sister, Saida Gonzales, also lived in the apartment. She testified that there was a gang fight. She further testified that her mother never told her about the weapon and that she never heard her tell her brother about it. The first time she learned of the weapon was when her brother was arrested.

Defendant testified on his own behalf. He denied knowing that the shotgun was beneath the mattress. He denied feeling anything lumpy in the bed on the night of the arrest or on the previous night. He claimed that his mother had not told him that she put the shotgun there.

Defendant's first contention is that the court committed reversible error in denying his motion to suppress evidence. He contends that the evidence obtained, namely the shotgun and shell, must be suppressed because they were seized as a result of an unlawful search.

Defendant concedes the validity of the arrest warrant. His argument is that because the record does not disclose the offense for which the warrant was issued, the search under the mattress cannot be justified. Counsel hypothesizes a situation in which an arrest warrant was issued because defendant failed to respond to citations issued for traffic violations. Absent other circumstances, defense counsel argues that the ar-

resting officers would not have been justified in searching defendant's bed.

However, the testimony of Officer Green, adduced at the hearing on the motion to suppress, shows that as he was leaning on the bed to arouse the defendant he felt a hard object under his hand. He testified that in his opinion, the object felt like the stock of a rifle or a shotgun. ■■ We think that it makes no difference for what offense defendant was arrested. Under the circumstances the search of the mattress was justified. The proper scope of a search incident to a valid arrest is determined by what was reasonable. (*People v. Wright*, 42 Ill.2d 457, 248 N.E.2d 78.) When Officer Green felt what he thought was a dangerous weapon underneath the mattress, it was reasonable that he conduct a search of the area in order to protect himself or prevent escape. (*People v. Brown*, 38 Ill.2d 353, 231 N.E.2d 577; *People v. Barksdale*, 14 Ill.App. 3d 415, 302 N.E.2d 718.) That the weapon recovered also turned out to be contraband does not make the search any the less reasonable. *People v. Pruitt*, 79 Ill.App.2d 209, 223 N.E.2d 537.

Defendant's second contention is that he was not proved guilty beyond a reasonable doubt of the offense charged. A person commits unlawful use of weapons when he "knowingly * * * possesses * * * any shotgun with a barrel less than 18 inches in length." (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(7).) Defendant does not dispute that the weapon seized was the kind which the statute defines as contraband. He maintains that the prosecution failed to prove that he knowingly possessed the weapon within the meaning of the statute.

■■ Criminal possession can be either actual or constructive. (*People v. Mack*, 12 Ill.2d 151, 145 N.E.2d 609.) Because defendant did not have actual possession of the weapon, the prosecution's case was aimed at showing that he had constructive possession of it. A person is in constructive possession of contraband when it is in a place under his immediate and exclusive control. (*People v. Cogwell*, 8 Ill.App.3d 15, 288 N.E.2d 729.) Defendant presented evidence to show that the weapon was not under his immediate and exclusive control. Defendant, his sister, and his mother all testified that defendant was not the only person who used the bedroom. There was testimony that defendant's brothers used the room and that his mother and sister kept clothes there. However, just before his arrest, defendant was the only person in the small bedroom and the only person sleeping on the bed. We find that the prosecution has sufficiently proved that the defendant had constructive possession of the weapon.

■■ Defendant also denied knowing that the shotgun was under his

mattress. Knowledge of the presence of the weapon is an essential element of the offense of unlawful use of weapons. (*People v. McKnight*, 39 Ill.2d 577, 237 N.E.2d 488, *cert. denied*, 394 U.S. 993.) As was done in this case, knowledge may be proved by circumstantial evidence. *People v. Zazzetti*, 6 Ill.App.3d 858, 286 N.E.2d 745.

■■ The prosecution presented evidence from which the jury could reasonably infer that defendant knew that the weapon was hidden under his mattress. Defendant denied knowing of the weapon's presence and presented a different account of how and why the weapon was concealed there. Resolution of the issue turned on the credibility of the witnesses and the weight given to their testimony, both of which are matters for the jury. The jury's finding will not be disturbed unless the evidence is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Galloway*, 28 Ill.2d 355, 192 N.E.2d 370, *cert. denied*, 376 U.S. 910.

The jury could have inferred that defendant knew the weapon was beneath the mattress from his testimony that he had slept on the bed for at least two nights when the weapon was there, and from the testimony that, although other members of the family used the bedroom, it was his. This inference was strengthened by the testimony of arresting officer Green that he could feel the weapon when, while unaware of its presence, he leaned on the bed. There was also the testimony of Officer Erickson that as he and his two partners were escorting defendant out of his mother's apartment, she said "What are you doing with that? Where did you get that?", and defendant made no response. However, this testimony was weakened by the fact that Officer Erickson did not include these statements in his report.

On the other hand, from the time of his arrest defendant consistently denied that the weapon was his or that he knew of its presence. However, without corroboration, his mother's account of how she found the gun and her subsequent actions with regard to it was difficult to believe. Both she and her daughter claimed there had been a gang fight in front of the apartment building. This would show that someone had the opportunity to have a weapon near the scene. Mrs. Nunez put the weapon under the mattress in her son's bedroom because she thought it was the safest place for it. She claimed that she called the police twice within the span of 15 minutes on the afternoon of February 25, 1971. Both times she maintained that she told the police that she had found a weapon and that they told her that someone would come to pick it up.

However, it was brought out that during the 10 or 15 minute period that the police officers were at the apartment, Mrs. Nunez did not tell them that she had previously called the police to report the weapon.

She claimed that she did not have an opportunity to tell them. The police officers maintained that they were talking in conversational tones, over which Mrs. Nunez could have easily spoken. Faced with this evidence the jury could have thought that the mother was fabricating a story in order to protect her son. We find that there was sufficient evidence in the record to prove that defendant knew of the weapon's presence.

Defendant's third contention is that he was denied due process of law by the State's suppression of evidence favorable to him. Before trial defense counsel caused the clerk of the court to issue a subpoena duces tecum directing the keeper of the records of the Chicago Police Department to produce any and all information, including the daily police call log, relating to complaints made by Ana Nunez. The Police Department failed to respond to the subpoena. Instead, it was learned that the police had turned over the logs to the State's Attorney. Defense counsel then filed a motion to produce any information given to the police by Ana Nunez, including the daily police logs for the period of February 24, 1971 to February 28, 1971. At the hearing on the motion the assistant State's Attorney admitted that he had possession of the requested information, but refused to allow defense counsel to inspect it. He claimed the information was irrelevant and immaterial. Defense counsel explained that the logs might corroborate Mrs. Nunez' story and without them defendant would be hampered in preparing his defense. The trial court denied the motion and stated "That is a matter for the trial."

Defendant relies on the language in *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194, that "the suppression by the prosecution of evidence favorable to an accused upon request violates dues process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (373 U.S. at 87.) Defendant argues that the police logs were material to the issue of defendant's knowledge of the contraband. Defendant relies also on *Giglio v. United States*, 405 U.S. 150, 31 L.Ed.2d 104, 92 S.Ct. 763, for the proposition that when the reliability of a given witness may be determinative of guilt or innocence nondisclosure of evidence affecting credibility falls within the *Brady* holding. Defendant claims that the police logs could have affected the jury's appraisal of Mrs. Nunez' credibility if they corroborated her testimony.

■■ Initially, the State contends that this issue is not properly before the court because it was not raised in defendant's motion for a new trial. We agree that the issue was not raised in the motion for a new trial. Defendant's motion alleged 14 grounds. The only grounds even closely related to the error now alleged are number 11, "that the defendant was

denied due process," and number 12, "that the defendant was denied a fair trial." These allegations are too general in and of themselves to have alerted the trial court to the alleged error. They stand in sharp contrast to the particularized nature of defendant's objection in his motion for production.

■■ In general, failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856.) The reasoning for this rule is that the expense and delay of appeal may be avoided if the motion is meritorious and the reviewing court may be aided by the findings and observations of the trial court with respect to its ruling on the motion. (*People v. Irwin*, 32 Ill.2d 441, 207 N.E.2d 76.) The reasons for the rule might have been particularly well served in the instant case. After hearing the trial testimony, the court may have been disposed to grant a new trial on the ground that defendant had indeed been hampered in preparing his defense.

In the instant case we believe the waiver rule should be relaxed. The disclosure issue was squarely presented to the trial court on the motion for production. We have the benefit of counsel's arguments and the court's ruling in that instance. Because we think that defendant may have been prejudiced if his claim is well founded we will consider the issue. (*People v. Norris*, 8 Ill.App.3d 931, 291 N.E.2d 184.) Cases, cited by the State, where waiver was found, are inapposite in that defendants in those cases never presented the issues sought to be reviewed to the trial court.

Section 114—13 of our Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—13) provides that discovery procedures in criminal cases shall be in accordance with Supreme Court Rules. The supreme court adopted revised rules for discovery in criminal cases, effective October 1, 1971 (Ill. Rev. Stat. 1971, ch. 110A, pars. 411—415.) Rule 411 provides that the rules shall be applied in all criminal cases wherein the accused is charged with an offense punishable by imprisonment in the penitentiary, as was done in the instant case. Rule 412 deals with disclosures to the accused. Section (c) of that rule provides "except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." The Committee Comments state that paragraph (c) requires the *pretrial* disclosure of material favorable to the accused under the holding of *Brady v. Maryland*. Section (h) of Rule 412 deals with "discretionary disclosures." It provides that "upon a showing of materiality to the

preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by this rule."

■■ Although defendant has not relied on these discovery rules in his brief, we think they are applicable to the suppression issue. The subpoena duces tecum was issued and the motion to produce was filed, argued, and ruled upon after October 1, 1971, the effective date of the rules. Therefore, our review of the trial court's denial of the motion to produce shall be in accordance with the substance and spirit of the new discovery rules. See *People v. Newbury*, 53 Ill.2d 228, 290 N.E.2d 592.

■■ In our view defendant should have been allowed a judicial determination of whether the police logs contained the pertinent information. If they did contain such information defendant was entitled to have discovery of it. The State's entire argument on this issue is that defendant acquiesced in the prosecution's determination that the police records were immaterial. We do not find this to be a correct view of the proceedings. Specifically the prosecution argues that because the trial court deferred ruling on the motion to produce it was incumbent on the defense to renew the motion at trial. The record shows that the trial court may have denied the motion because he thought it was premature. If this was his finding, it was incorrect. Defendant was entitled to a prompt determination of his motion on the merits so that he could prepare his defense accordingly. No showing of cause was made, consistent with Rule 415(d) (Ill. Rev. Stat. 1971, ch. 110A, par. 415(d)), which would have permitted the court to defer the disclosure. See S.H.A., ch. 110A, par. 415, Committee Comments (1968).

■■ The State complains that it would be an improper expansion of the *Brady* holding to find that the trial court committed reversible error in denying defendant's motion when the only thing in the record to show that favorable evidence may have existed was defense counsel's assertion that it did, and his explanation of how it would be favorable. Defendant argues that the position urged by the State would allow the prosecution to suppress evidence and deny the defendant the opportunity to contest such action. Although it is true that the trial court did not examine the police log before his ruling, we find that defense counsel did lay a sufficient foundation to allow the trial court to examine the records as against the prosecution's claim of immateriality.

We are not suggesting that the prosecution acted in bad faith. However, we cannot determine whether his claim of immateriality was an informed one. The record of the hearing shows that the prosecution's objection preceded defense counsel's explanation for his request and the prosecution may have been unaware at that time of why defendant

wanted the police records. The trial court denied the motion without giving the prosecution an opportunity to respond to defense counsel's argument.

██ We agree that we cannot determine the contents of the requested police logs from the instant record. However, we do think that if the police logs contained evidence that Mrs. Nunez did call the police to report the weapon, defendant is entitled to a new trial. (*People v. Baltimore,* 7 Ill.App.3d 633, 288 N.E.2d 659.) Outright reversal and remandment for a new trial is not warranted by the facts and circumstances of the instant case. (See *People v. Wisniewski,* 8 Ill.App.3d 768, 290 N.E.2d 414.) However, if the records do, in fact, reflect that Mrs. Nunez called the police, their suppression could not be held to be harmless error. A large portion of the prosecution's case was aimed at discrediting Mrs. Nunez' story. In addition, during closing argument, the prosecution argued emphatically that her story was unbelievable.

We believe that the proper disposition in this case is to remand the cause to the trial court in order that it conduct an examination of the police logs originally designated in the motion for production. If such examination reveals that a call for assistance was made the trial court shall order a new trial and defendant may have discovery of such information. If no such information is found the court shall enter a finding of fact to that effect and enter a new judgment of conviction. See *People v. Wright,* 30 Ill.2d 519, 532-33, 198 N.E.2d 316, 323.

If a new judgment is entered defendant's sentence must be modified in accordance with the Unified Code of Corrections. (*People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1.) Subsequent to defendant's conviction the offense for which he was convicted was classified as a Class 4 felony. Conviction of a Class 4 felony is punishable by imprisonment for not less than 1 year, nor more than 3 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.) Accordingly, if on remand a new final judgment is entered, the sentence imposed shall be a term of 1 to 3 years in the penitentiary.

Judgment vacated and cause remanded with directions.

McNAMARA, P. J., and MEJDA, J., concur.