THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAFAEL SALAZAR, Defendant-Appellant.

First District (1st Division)   No. 60729

Opinion filed April 5, 1976.

George P. Lynch, of Chicago, and Richard Lackner, of Downers Grove, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, Rafael Salazar, was convicted after a jury trial on four counts of involuntary manslaughter, and sentenced to four 2- to 10-year terms to be served concurrently. The incident on which his guilt was based involved a collision on the Kennedy Expressway on February 24, 1973, between a car he owned and was driving and another vehicle, resulting in the death of four of the occupants of the other car.

Prior to the collision, a compact Chevrolet with a yellow body and black vinyl top, established at trial to be the defendant's, was seen speeding along the expressway in the southeastward lanes by five other motorists traveling in the same direction. The defendant's car was cutting across lanes, darting in and out of traffic and passing other cars at rates of speed up to or more than 70 miles per hour. The other motorists testified there were two occupants in the defendant's car, and one of them identified the defendant as the driver. The other occupant proved to be Angel Carrero, a friend and co-worker of defendant, who testified that defendant was the driver at the time of the collision.

At a point in the vicinity of the Addison Street exit, the defendant's car

went off the roadway, hit the guardrail on the east side of the expressway, and in veering back onto the expressway struck the rear of an automobile in which the victims were riding. The impact forced the victims' car off the highway, into the guardrail on the left and then into an abutment. The car bounced off the abutment and came back on the expressway where it rolled over. The driver, James Freeman, his wife, his son and daughter were killed. Two other occupants of the car, Mr. Freeman's daughter, Charlotte, and son, Alvin, survived.

The defendant's car stopped momentarily and then swerved around the overturned car, leaving the scene at a high rate of speed. Witnesses got the license plate number of the car and it was the license issued to the defendant. At the time of the collision the pavement was dry and it was light.

Shortly after the collision a police patrol unit, alerted to look for the vehicle involved in the collision, located it parked on the street near an expressway exit a short distance south of the site of the collision. The officers who found it testified the doors of the car were locked, the license plates were missing, the hood was still warm from recent running of the engine, they observed fresh damage to the car's exterior, and they saw a liquor bottle on the front seat. Personnel assigned to the police crime lab opened the car, and in searching the inside found the bottle was an opened bottle of brandy. The bottle of brandy was admitted in evidence.

A short time after the defendant's car was located and the bottle inside the car recovered, the police received a report from the defendant that his vehicle had been stolen. The police went to defendant's residence approximately 2 hours after the collision, discussed the alleged theft of the car with him, and then returned with the defendant to the automobile which the defendant identified as his. The police asked the defendant to accompany them to a police station where he was placed under arrest later that night.

■■ The defendant contends that the admission of the brandy bottle in evidence was error because it was the result of an unlawful search of defendant's car prior to its being reported stolen and prior to defendant's arrest, that his motion to suppress evidence found in the search of the car was improperly denied and that the court should have granted a rehearing at trial on his motion to suppress the evidence when he learned the brandy bottle was being offered in evidence. The warrantless search of an automobile which the police have reasonable grounds for believing was used in the commission of a crime is proper for the purpose of seeking incidents of the crime. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.) The police when searching the car knew of the collision, had a good description of the car, and in view of their observation of the damage had probable cause for believing it had been

used in the commission of an offense. They were, therefore, justified in searching it for incidents of the crime without first obtaining a warrant, and the bottle was properly admitted into evidence as an incriminating item recovered during a valid search.

An additional justification for the search was that the trial testimony disclosed that the open bottle was on the front seat in plain view from the outside of the vehicle. *People v. Joyner* (1972), 50 Ill. 2d 302, 310, 278 N.E.2d 756.

During trial, defense counsel claimed he did not know at the time of the pretrial hearing that the State had possession of the bottle. The court requested some proof of lack of such knowledge, but the defendant offered none. In any event the issue was not possession of the bottle, but how and in what manner the State obtained it. The pretrial hearing was full and complete, and defendant filed a memorandum in support of his pretrial motion setting forth his objections to the search of the car. The circuit court did not err in receiving the bottle in evidence.

■■ The defendant complains of trial errors which he claims were prejudicial. First, Charlotte Freeman, 8 years old, was called as a witness by the State and walked to the witness stand in the presence of the jury. A *voir dire* examination was then held outside the presence of the jury, and the court concluded the child was not competent to testify. The defendant's objection is that Charlotte had difficulty walking as a result of the collision, and permitting the jury to observe her limping to the witness stand unreasonably inflamed the jury against the defense. The usual procedure is to object to the competency of a witness as soon as he is sworn. (*People v. Sawhill* (1921), 299 Ill. 393, 132 N.E. 477.) But, this need not be an inflexible rule. Charlotte Freeman was never sworn in the presence of the jury because of defense counsel's immediate objection to her competency and to her being on the witness stand while the jury was present. Although it would have been preferable not to have called Charlotte to the stand in the presence of the jury, we cannot in view of the other evidence in the case regard her fleeting appearance before the jury as so prejudicial that it is a ground for reversal.

■■ Charlotte's brother, Alvin, 10 years old, was determined to be competent to testify after a lengthy *voir dire* examination outside the presence of the jury. The trial judge has the responsibility of determining the competency of a child witness; his decision will be reversed only in the event of a manifest abuse of discretion or misapprehension of some legal principle. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10.) The evidence does not establish that the court's ruling that Alvin was competent to testify was an abuse of discretion or for any reason improper. Alvin's testimony on direct examination related only to where

the members of his family were sitting in his father's car immediately prior to the collision, and his testimony on that subject was not only clear, but unrefuted.

The defendant also objects to statements made by the prosecutor in closing arguments. One of the prosecutor's statements was that the defendant left Charlotte and Alvin fatherless and motherless. The State did not dwell upon this, and the brief reference to the children being left orphans was neither prejudicial nor unduly inflammatory. (*People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161; *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) A prompt objection to the statement was immediately sustained. In view of the overwhelming evidence of the defendant's guilt, the statement, while improper, did not deprive the defendant of a fair and impartial trial. *People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630.

A second objection to the State's closing statement was the prosecutor's remark in rebuttal that the only people who knew how the collision took place were the five witnesses who testified, Charlotte and Alvin and "the two people who were in the defendant's car." The prosecutor then continued with the following statement:

"And they testified as to what happened. Their testimony has been uncontradicted, undenied, unrefuted, and it stands before you uncontradicted, undenied, unrefuted."

The defendant contends that the implication of these statements was that the defendant failed to testify, and that his motion for a mistrial based on these statements should have been granted. The prosecution's repeated use of similar language in final argument has been held not to infringe upon the defendant's privilege against self-incrimination. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283.) It was the failure of the defense to present any substantial evidence refuting, contradicting or denying the State's case as well as the strength of the State's proof to which the jury's attention was directed by the prosecutor's words rather than the defendant's failure to take the stand. *People v. Chellew* (1968), 104 Ill. App. 2d 100, 243 N.E.2d 49, on which defendant relies, is distinguishable in that the prosecutor referring to defendants said, "I didn't hear them say that." The court found this to be a direct reference to defendant's failure to testify. In contrast we conclude that the prosecutor's reference to "uncontradicted, undenied and unrefuted" testimony was to impress upon the jury the strength of his case. The argument was not improper.

The defendant charges that the State delayed complying with his discovery request, but fails to point out how he was prejudiced by any delay which took place. The defendant's motion for discovery was filed

on June 18, 1973, 3 days prior to trial, and the State's answer was filed the next day. Transcripts of various pretrial proceedings were provided for defense counsel as the trial progressed, and there is nothing in the record demonstrating that counsel did not have these prior to his examination of witnesses whose earlier testimony was set forth in them. The record discloses an attempt by defense counsel to impeach one State witness with the transcript of the coroner's inquest, as well as his use of the grand jury testimony during the *voir dire* examination of another witness. The defendant did not request any recess during the trial because of the State's delay in providing transcripts (see Illinois Supreme Court Rule 415(g)), and if the State's response to the defendant's request was in any way tardy, defendant has not shown that he was harmed by the delay.

The next issue raised by the defendant relates to the court calling the defendant's passenger, Angel Carrero, as a court's witness. The defendant moved after the State had rested that the court call him as a witness, explaining that Mr. Carrero was substantially changing his previous statements and testimony which were to the effect that the cause of the collision was that the victims' car cut off the defendant's car. The court held a *voir dire* examination of Carrero to determine whether he should be called as a court's witness. During that examination his testimony was that the defendant lost control of his car immediately prior to the collision. The court ruled that in view of the change in his testimony he would be called as a court's witness and either side would be permitted to cross-examine him, if they wished.

After this ruling was announced, the defendant advised the court he did not wish to have Carrero called as a court's witness after all, and objected to the State's examination of Carrero on the ground that the State had already rested. For the court to have acquiesced in the defendant's change of mind would put the defendant in the position of being able to test out the court, to seek a reversal if the court denied his motion to call Carrero as a court's witness, and to reserve the option of rejecting Carrero as a witness if the court granted his motion. The procedure for which the defendant sought judicial sanction was clearly self-serving and the circuit court did not err in rejecting it.

Having ruled upon and granted the defendant's motion with respect to Carrero, the trial court properly afforded the State the opportunity to cross-examine him. The ends of justice required that the court call the eyewitness Carrero, whose veracity was not vouched for by either party, since he was the only person who observed both the defendant's actions in his car and the movement of the victims' car immediately prior to their impact. (*People v. Moriarity* (1966), 33 Ill. 2d 606, 615, 213 N.E.2d 516; *People v. Robinson* (1958), 14 Ill. 2d 325, 153 N.E.2d 65.) The court did

not abuse its discretion in permitting the State to reopen its case for the purpose of cross-examination of the court's witness, and in any event, the State's privilege of cross-examination was incident to Carrero being called as a court's witness.

■■ Finally, defense counsel did cross-examine Carrero and during that cross-examination Carrero testified that the defendant's car had mechanical difficulty. Defendant reminded the jury that Carrero testified the defendant's car malfunctioned and argued, as he also does in this appeal, that this rather than defendant's conduct was the cause of the collision. The defendant is not entitled to the dual advantage of objecting to Carrero having testified while at the same time relying on his testimony to absolve himself.

■■ The defendant, relying on Carrero's testimony that there was a mechanical failure of defendant's car and also evidence of an accumulation of carbon monoxide in the bloodstream of Mr. Freeman, the driver of the car the defendant struck, contends the collision was attributable to either of these factors, and consequently the proof failed to establish defendant's guilt beyond a reasonable doubt. Carrero's opinion was not that of an expert, and defendant's reliance on *People v. Richardson* (1974), 21 Ill. App. 3d 859, 316 N.E.2d 37, as an authority for proof of malfunctioning of a vehicle resulting in an accident is misplaced because in that case the defendant presented an engineer as an expert witness who inspected the defendant's car after the accident. With respect to the accumulation of carbon monoxide in Mr. Freeman's blood, a pathologist called by the State as an expert witness concluded from the facts that Mr. Freeman must have somehow inhaled the carbon monoxide while lying on the pavement after the collision. It is unnecessary to restate the other evidence already set forth in this opinion. It was more than sufficient to support the jury's finding, and it was the jury's province to decide whether the defendant's theory of how the collision occurred and Mr. Freeman was killed was believable.

■■ Instructions relating to a finding of reckless homicide (Ill. Rev. Stat. 1973, ch. 38, §9—3(b)) were refused, and the State concedes this was error. The circuit court in refusing these instructions relied on the opinion of the fourth district appellate court in *People v. McCollough* (1972), 8 Ill. App. 3d 963, 291 N.E.2d 505, a holding subsequently reversed by our Supreme Court in *People v. McCollough* (1974), 57 Ill. 2d 440, 313 N.E.2d 462. This error is not, however, a basis for reversal. Pursuant to the power granted to this court by Illinois Supreme Court Rule 615(b)(3), defendant's convictions should be reduced to the lesser offense of reckless homicide and defendant's sentences should also be reduced to the term provided for a Class 4 felony. Ill. Rev. Stat. 1973, ch. 38, §1005—8—1.

808

Accordingly, the judgment of the trial court is modified to adjudge the defendant guilty of the offense of reckless homicide, and his sentences are reduced to four concurrent terms of not less than 1 nor more than 3 years.

Judgment affirmed as modified.

GOLDBERG, P. J., and BURKE, J., concur.