THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE CRUZ, Defendant-Appellant.

First District (1st Division) No. 61067

Opinion filed April 19, 1976.

Francis E. Andrew, of Chicago (Stuart F. Lubin, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Jose Cruz, was charged with the crime of armed robbery, found guilty by a jury and sentenced to 8 to 25 years in the penitentiary. He raises on this appeal the following issues: (1) whether his identity as the offender was proven beyond a reasonable doubt; (2) whether the cross-examination of the eyewitnesses was so restricted that he was denied his right of confrontation; (3) whether his arrest was illegal and the resulting identification at the lineup therefore excludable; (4) whether he was deprived of a fair hearing on his motion to suppress; (5) whether the State's remarks during closing argument constituted a comment on his refusal to testify; (6) whether the admission of prior crime evidence was

prejudicial; and (7) whether hs sentence of 8 to 25 years in the penitentiary was excessive.

On September 6, 1972, at approximately 3 a.m., Douglas Bailey was driving an American-United cab on North Western Avenue in the City of Chicago. Two young men hailed his cab and Bailey pulled to the curb, observing the men as they approached the cab and entered. They asked to be taken to the intersection of Belden and Drake Streets in Chicago. Upon reaching that destination, the men told Bailey to continue on for two more blocks and then pull over. Bailey did as directed, but when he pulled over, stopped the meter and turned to collect the fare, each man pointed a gun at his head. The men then reached over into the front seat, searched Bailey's pockets and removed approximately $60. Bailey was then told to drive a few blocks and pull into an alley. After stopping, Bailey was pulled from the cab and taken to the basement of a nearby building and told to sit on the floor and remain there. After the robbers left him, Bailey heard his cab being started and driven away. He got up and made his way to a police station, where he reported the robbery.

■■ The first issue raised by defendant is whether his identity as the offender was proven beyond a reasonable doubt. A careful review of the victim's testimony in this case convinces us that his identification of the defendant was positive and based on more than ample opportunity to observe the offender. The victim picked up the two robbers on a well-lit main thoroughfare; he watched the two men as they crossed the six lanes of the street to reach his cab; they passed directly in front of his headlights before entering the cab; he turned on the overhead light inside the cab before they entered and turned to greet them as they stepped into the cab; the dashboard and meter box lights were on inside the cab throughout the robbery; the victim testified that during the 10-minute ride he purposely looked at them several times through the rear view mirror and over his shoulder because he was leery of them; there was no partition between the two seats of the cab to obstruct the victim's view of the defendant; the cab driver again turned on the inside overhead light and turned around to collect his fare when he reached their destination; the two offenders reached into the front seat and searched the driver's pockets, obviously permitting Bailey to see the offenders at a very close range; at the final stage in the alley, under a street light, the offender opened the front door of the cab, which caused the overhead light to come on, and pulled Bailey from the cab, allowing a face-to-face confrontation at a distance of six inches; and, finally, he was led shoulder to shoulder by the offender to the basement of the building. The only uncertainty in Bailey's identification testimony as to facial hair or otherwise related to the second offender and not to Cruz. But Bailey admitted that he did not have as much opportunity to observe the second

robber as he did the defendant, who was seated on the passenger side of the cab in sight of Bailey's rear view mirror and over-the-shoulder glances. It was the defendant whom Bailey could more easily see when his pockets were searched and it was defendant who pulled Bailey from the cab. Three quotations from Bailey's testimony give ample proof of the positiveness of his identification:

"I told the judge [at a preliminary hearing] that I am positive about Mr. Cruz, but I am not positive about the other man.

\* \* \*

Q. As you sit here today, Mr. Bailey, can you tell us whether or not the two individuals that robbed you had mustaches on September the 6th, 1972?

A. I clearly remember Mr. Cruz having a mustache. The other man, I am not that certain on.

\* \* \*

Q. Mr. Bailey, as you sit there now, sir, is there any doubt in your mind that the gentleman you previously identified in court as the man who robbed you on September 6, 1972?

A. No, there is not."

■■ Defendant's second argument is that the trial court unduly restricted the cross-examination of the prosecution witnesses in violation of his right to confront his accusers. We have no argument with the proposition cited by defendant:

"Where the principal issue concerns the identification of an accused, defense counsel should be given wide latitude on cross-examination in order that the intelligence of the witness, his powers of discernment and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity for determining the value of his testimony." (*People v. Morris* (1964), 30 Ill. 2d 406, 409, 197 N.E.2d 433.)

However, we judge that the cross-examination of the eyewitnesses in this case was sufficiently broad to comply with the above standard.

More specifically, defendant argues that he was precluded from cross-examining Bailey about his inability positively to identify the other robber, citing *People v. Watkins* (1974), 23 Ill. App. 3d 1054, 320 N.E.2d 59. *Watkins*, however, is clearly distinguishable from the instant case; there the defense was totally precluded from inquiring into the identification of an accomplice against whom the charges had been nolle prossed. Here, the trial court permitted extensive cross-examination of Bailey regarding the identification of Cruz's accomplice, including questions on whether he carried a cane and what it looked like, the type and color of the clothing worn by the accomplice and whether he wore a hat and how much of his hair was covered by the hat. Defense counsel

also was permitted to elicit the fact that Bailey was unsure if the accomplice had a mustache and that he was unable positively to identify the accomplice. As *Watkins* points out, the inability to identify an accomplice is for the trier of fact to consider because it is pertinent to the witness' ability to identify the one on trial. Here, the jury was permitted to hear not only the uncertainty on detail regarding the accomplice, but also the ultimate fact that Bailey could not positively identify him at all.

■■ Defendant also argues that he was prejudiced when defense counsel was not permitted to question Bailey about some confusion on the part of Bailey when he saw Cruz's brother in the courtroom at an earlier date. We have closely examined this area of the transcript and conclude that the jury was sufficiently informed of the confusion on Bailey's part. When Bailey saw Cruz's brother, he was concerned that this was the man the State was going to prosecute. Bailey stated in the presence of the jury that although Cruz and his brother had a similar face, the brother had darker skin and he was thinner, shorter and younger than the one who robbed him and that "I was afraid that I would have to identify this man. I knew that I could not identify him as the man who robbed me and that's why I was concerned."

We have examined defendant's other assignments of error regarding the cross-examination and find them to be without merit.

■ The third issue raised concerns the legality of the arrest of defendant and the resulting lineup identification. The basis for defendant's argument that the arrest was illegal rests on the fact that while the arresting officer testified that he stopped Cruz for going through a stop sign and then for failing to produce a driver's license, no citations for these violations were issued and there is no mention of them on the written police report. One of the police reports states that the stop was made because of suspected curfew violations, but this report was not made or signed by the arresting officers. Defendant argues that "the failure to issue traffic citations or mention those violations in official police reports is an omission tantamount to admitting that traffic violations were but a figment of the officers recent imagination" and cites *People v. Catavdella* (1964), 31 Ill. 2d 382, 202 N.E.2d 1. We believe *Catavdella* to be inapplicable. In that case, the arresting officer's testimony at a preliminary hearing was directly contradictory in several respects to his testimony at the hearing on the motion to suppress and at trial. The arresting officer's testimony here contains no such contradictions. Officer James Adams of the Chicago Police Department testified at a hearing on a motion to suppress and at trial that on September 8, 1972, at approximately 1:45 a.m., he observed the defendant driving a car with one male and two female passengers. He stopped the car after seeing it fail to stop at a stop sign. When he asked Cruz, the driver, for his

operator's license, Cruz told him he did not have one with him. Adams' partner walked to the passenger side of the car and after talking to one of the female occupants determined that she was a juvenile. The partner ordered the three occupants out of the car and then searched the car and discovered a revolver on the front seat under the girl's sweater. At this point, with Cruz already under arrest for the two traffic violations, the juvenile girl was placed under arrest for unlawful use of weapons. The juvenile girl was Carmen Cruz, the wife of defendant. Adams also recalled that he was aware of several armed robberies in the area in which two males and two females had been involved and that the defendant fit the description of one of the men sought. Adams' testimony at the hearing on the motion to suppress and at trial that he stopped the car for failure to obey a stop sign was unequivocal and consistent. We hold the arrest was proper. Because no traffic citations were issued does not mean the violation did not occur. In light of what the officers found following the stop, including the gun, the juvenile violation and the suspicion that Cruz and the others were armed robbery suspects, we can easily understand why the traffic citations were overlooked, either deliberately or inadvertently. Since the arrest in this case was valid, the resulting identification of Cruz at the lineup was properly admitted into evidence.

■■ Defendant also argues that he was denied effective assistance of counsel because no ruling on the motion to suppress was ever obtained. Defendant's privately retained attorney filed a motion to suppress the lineup identification of defendant. After the hearing, the judge set a date for ruling, but on the date set Cruz did not appear in court and his bond was forfeited and a warrant was issued for his arrest. It was subsequently learned that Cruz was in the hospital on the date set because of a gunshot wound. Five months later Cruz was finally arrested and brought before the Chief Judge, who assigned the case for trial to a judge different from the one who heard the motion to suppress. The case went to trial and the witness Bailey testified, without objection from counsel that this evidence should be excluded, that he had identified defendant at a lineup. Defendant concedes that the question of whether the arrest was valid is a legal one properly resolvable by this court. Considering our decision that the arrest was valid, the failure of defense counsel to pursue a ruling on the motion to suppress was harmless to defendant.

The fourth issue raised by defendant also involves the hearing on the motion to suppress. After the arresting officer and the investigating officer testified, defense counsel called Mr. Bailey, the victim, as his next witness. The following colloquy then occurred:

"MR. PAPPAS (Assistant State's Attorney): Before Mr. Bailey is brought in I move Mr. Bailey not be permitted to testify because it

is well beyond the scope of Mr. Rimland's motion, dealing with the validity of the arrest.

THE COURT: Can Mr. Bailey's testimony add anything to it?

MR. RIMLAND (defense counsel): Possibly for purposes of the record, maybe the State would like to enter into a stipulation there wasn't any identification that occurred subsequent to the arrest. That would be my purpose for calling him. That Mr. Bailey didn't in fact subsequently identify the defendant.

MR. PAPPAS: All right."

At the trial, the State introduced testimony that Bailey had identified Cruz at a lineup subsequent to the arrest and defendant argues that by the State's action he was deprived of a fair and impartial hearing on his motion to suppress. However, the State points out that at trial there was no objection made to the introduction of Bailey's identification testimony and the stipulation was not called to the attention of the trial judge. The State argues that any benefit the stipulation may have had for defendant has been waived.

■■ We hold that the stipulation did not deprive defendant of a fair hearing on his motion to suppress. As the written motion to dismiss shows, the central issue at that hearing was whether the arrest was valid, assuming that if it was not then the lineup identification would be excluded, because it would be directly traceable to the alleged unlawful detention of defendant. On appeal defendant has argued a totally different issue. His position now is that the stipulation stopped defense counsel from inquiring into the issue of "whether his identification was improperly influenced either by police actions or other extraneous factors unduly affecting him." In other words, at the hearing defendant was arguing that the arrest was made without probable cause and in this court he attempts to argue that possibly the lineup was suggestive. Since defendant did not argue the suggestive lineup issue in the trial court, he may not raise it for the first time on appeal.

Furthermore, the purpose of the stipulation was nothing more than what defense counsel himself recited: "Possibly for purposes of the record, maybe the State would like to enter into a stipulation * * *." Since defense counsel's written motion stated the fact of the lineup identification, since the investigating officer testified at the hearing that there was a lineup, and since defense counsel continued with the hearing, we certainly cannot believe that the stipulation misled defense counsel into not pursuing fully his motion to suppress. Its only purpose was to prevent the complaining witness from testifying at the hearing on the motion to suppress that he did identify Cruz at a lineup subsequent to Cruz's arrest, because, as the Assistant State's Attorney's objection stated,

his testimony was beyond the scope of the "motion, dealing with the validity of the arrest", *i.e.*, the subsequent identification had nothing to do with the validity of the defendant's arrest.

■■ Defendant's fifth contention is that the State's Attorney's remarks during closing argument constituted a comment on his silence, thereby shifting the burden of proof to defendant. The line between what are permissible and impermissible remarks on the evidence is indeed a fine one, but we do not believe the State has crossed it in this case.

The State's Attorney began his closing argument in this case by reminding the jury that the State has the burden "to present all the evidence and to establish the guilt of the defendant." He then went on to point out that the testimony of the State's witnesses was uncontradicted. The cases cited by defendant are distinguishable. In *People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527, the prosecution stated: "And then he's got to explain the blood on his pants. * * * Do we hear one iota of evidence that he did cut himself? No. * * * There is no explanation for that blood on his pants from him * * *." In *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490, the remarks of the prosecutor could not conceivably be construed as only stating that the State's case was uncontradicted, because since two witnesses had in fact testified for the defense the "underlying purpose and ultimate effect * * * was to call attention to the defendant's failure to testify." In *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432, the prosecutor stated: "* * * before you can find her not guilty, you must say that she had created a reasonable doubt."

The Illinois Supreme Court has set "an appropriate test in deciding whether such closing argument violated the defendant's right to remain silent * * * as whether 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?' " (*People v. Mills* (1968), 40 Ill. 2d 4, 8, 237 N.E.2d 697.) This was not a case where "the prosecutorial design appears to have been to point the finger of blame directly at the defendant for his failure to testify when it was within his power to enlighten the jury." (*People v. Mills* (1968), 40 Ill. 2d 4, 9, 237 N.E.2d 697.) In *People v. Norman* (1963), 28 Ill. 2d 77, 80-81, 190 N.E.2d 819, the court stated:

"* * * Defendant maintains that repetitous statements of counsel for the People that the testimony of the State's witnesses was 'uncontradicted' served to call the attention of the jury to the fact that the defendant had declined to testify, and that such conduct was a violation of section 6 of division XIII of the Criminal Code. Ill. Rev. Stat. 1961, chap. 38, par. 734.

It is provided by statute that the neglect of a defendant to testify shall create no prejudice against him and it is further provided that

no reference or comment shall be made upon the defendant's neglect to testify. (Ill. Rev. Stat. 1961, chap. 38, par. 734.) In a number of cases we have reversed judgments of conviction where the prosecutor has directly or indirectly referred to the defendant's failure to testify. *People v. Cheney*, 405 Ill. 258; *People v. Annis*, 261 Ill. 157; *Quinn v. People*, 123 Ill. 333.

This court has held that a prosecutor could properly call the attention of the jury to the fact that the State's evidence was uncontradicted even though the circumstances were such that the defendant was the only person who could have denied the People's evidence. (*People v. Keagle*, 7 Ill. 2d 408; *People v. Novak*, 370 Ill. 220; *People v. Birger*, 329 Ill. 352.) Although the prosecutor emphasized the uncontradicted character of the People's case, there was no evidence whatever presented by the defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of this statute. Furthermore, [some of] these statements were not objected to by the defendant at the time of the trial."

See also *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283; *People v. Salazar* (1976), 37 Ill. App. 3d 800, 347 N.E.2d 86.

■■ The sixth issue raised by defendant involves the introduction of prior crime evidence at trial. We have recently held:

"As a general rule, evidence of other crimes is admissible to establish identity, intent, absence of mistake or accident, motive, knowledge, or a common scheme or design. (*People v. Lehman*, 5 Ill. 2d 337, 125 N.E.2d 506.) * * *

In McCormick on Evidence it was noted that other crimes were admissible if they were 'so nearly identical in method as to earmark them as the handiwork of the accused.' McCormick on Evidence §190, at 449 (2d ed. 1972)." *People v. Emmett* (1975), 34 Ill. App. 3d 167, 170, 340 N.E.2d 235.

The prior crime was the armed robbery of another cab driver, Thomas Foyer. Foyer, like Bailey, drove an American-United cab. Foyer was robbed at 3 a.m., 24 hours before Bailey was robbed at 3 a.m. Foyer picked up his assailants only 1½ miles from the point Bailey picked up his. Both drivers were told to drive to the intersection of Drake and Belden. After stopping and turning to collect the fare, both drivers were met by two men with revolvers and both were then told to put their hands on the wheel. Both drivers had their pockets searched by the robbers and in each crime their wallets were given back. Both drivers were taken to an alley. The alleys were in very close proximity to each other. Once in the alley, each was taken from his cab and told to lie or sit down until the robbers

were gone. Both drivers had their cabs taken by the robbers. And finally, Foyer positively testified that Cruz was one of the men who robbed him.

Defendant argues that the evidence of the Foyer robbery was unnecessary because Bailey had already positively identified him as the robber. However, it is clear from the transcript of the trial that the crux of the defense was the supposed inability of Bailey to positively identify Cruz as his assailant. Also, on appeal the basis for the argument that Cruz was not proven guilty beyond a reasonable doubt is that Bailey allegedly vacillated in his identification of defendant. Since the identity of Cruz as the robber was a substantial issue at trial, the evidence of the prior crime involving Cruz was properly admitted. Furthermore, a limiting instruction was given to the jury on the prior crime evidence.

■■ The last point raised by defendant is that the trial court considered an uncharged offense (the prior crime against Foyer) in sentencing him and that the sentence of 8 to 25 years was unduly harsh. We agree and, under the power granted to us by Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)), we reduce defendant's sentence to a term of not less than 4 nor more than 12 years in the Illinois State Penitentiary.

Judgment affirmed; sentence reduced.

GOLDBERG, P. J., and SIMON, J., concur.