THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LLOYD JOSEPH THERRIAULT, Defendant-Appellant.

First District (1st Division)    No. 59739

Opinion filed October 4, 1976.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

Lloyd Joseph Therriault was indicted and tried for rape (Ill. Rev. Stat. 1969, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1969, ch. 38, par. 11—3), and armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2). A jury found defendant guilty on all three counts and he was sentenced to a term of 20 to 60 years' imprisonment. Thirteen issues are raised on appeal.

Defendant contends: (1) that the line-up from which he was identified was suggestive; (2) that he was not proved guilty beyond a reasonable doubt; (3) that it was error to admit testimony of a second woman

demonstrating common scheme or design; (4) that Supreme Court Rule 451(a) constitutes an improper exercise of the Supreme Court rule-making power; (5) that he was denied effective assistance of counsel; (6) that it was error to deny a motion to produce and a motion for a bill of particulars; (7) that it was error to admit details of his arrest; (8) that it was error to admit certain physical evidence; (9) that the State's rebuttal testimony was improper; (10) that it was error to refuse to admit certain surrebuttal testimony; (11) that the Assistant State's Attorney's closing argument was prejudicial; (12) that the mandatory parole term provided by section 5—8—1(e) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(e)) is unconstitutional; and (13) that the sentence is excessive. At the outset of trial defense counsel waived all pretrial motions.

The complainant testified that on August 20, 1970, at approximately 5 a.m. she arose, prepared coffee and proceeded to bathe herself. While she was in the bathtub she heard a noise in the kitchen of her ground floor apartment located at 5773 Northwest Highway in Chicago. The intruder walked to the front of the bathroom entrance and stood approximately 8 feet from the complainant with a gun in his hand. The man instructed the complainant to turn her head towards the bathroom wall. The man also told her that she would not be harmed if she cooperated with him. The man walked into the bathroom, pulled the complainant from the bathtub, forced her into the bedroom, and compelled her to lie across the width of the bed. Lights were burning in the kitchen, the bathroom and in the hallway, which is adjacent to the bathroom and bedroom. Complainant testified that she was able to see the man's face in direct light before he forced her into the bedroom.

The man removed his trousers, but he did not undress any further. He placed the gun on a chair and draped his pants over the gun. The man then pulled the complainant to the edge of the bed and performed acts of intercourse and cunnilingus. Complainant stated that she looked directly into the man's face during the assault which lasted approximately 5 to 8 minutes. The bedroom was illuminated by the hallway light which shone through the bedroom's open entrance. At the completion of his acts, the man put on his trousers and walked to the kitchen through the hallway. The man opened complainant's purse, which had been placed on the kitchen table, removed her wallet, and took $1 in currency. Complainant stated that $1 was the total amount of money in her wallet. The intruder exited through the kitchen door which led to the rear of the apartment building. Complainant later discovered that the man had initially entered the kitchen through a large sliding window.

On direct examination complainant identified defendant as the man who raped her on the morning of August 20, 1970. She further identified

a brown, wool cardigan sweater as the sweater defendant was wearing at the time. Defendant was wearing the same sweater on the night of his arrest, August 27, 1970. She also testified that a .22-caliber revolver, which was discovered in the defendant's car at the time of his arrest, closely resembled the gun the defendant carried on August 20, 1970.

After the defendant left the apartment complainant telephoned her son, who was living with his father-in-law. The complainant told her son's father-in-law that she had been raped. The complainant's son and the police arrived at the apartment. The complainant was taken to Resurrection Hospital where she was examined. The father-in-law corroborated the complainant's testimony at a later point in the trial.

On August 27, 1970, at approximately 5:30 a.m. the complainant received a call from the police. She proceeded to the Jefferson Park-Gale Street Police Station at approximately 9 a.m. The complainant testified that she did not communicate with any police officer while she waited in a small room in the station. She was then taken to a larger room where she viewed a line-up of four men. She recognized the defendant in the line-up as the man who raped her. Photographs of the line-up were introduced into evidence.

Bernadette Kwak, a microanalyst for the Chicago Police Department, testified that she microscopically examined a slide of a vaginal smear taken from a medical examination of the complainant at Resurrection Hospital on August 20, 1970. Spermatozoa was present on the slide of the vaginal smear. Bernadette Kwak also microscopically examined slides composed of extracts from the bedsheet which covered complainant's bed on August 20, 1970. The slides of the bedsheet extracts were positive for spermatozoa.

On August 27, 1970, at approximately 2 a.m. Officer Robert Francesconi responded to a burglary-in-progress call at 6543 Northwest Highway. When he arrived at the scene, Officer Francesconi observed defendant running from a gangway between two buildings "with a brown object in his hand." Officer Francesconi was parked in an unmarked car parallel to the defendant's 1964 Oldsmobile. Officer Francesconi shouted at the defendant in an attempt to stop him; however, the defendant pulled away in his automobile. An unmarked squad car gave chase and eventually curbed the defendant. Officer Francesconi stated that street lights illuminated the area enabling him to clearly see the defendant's activities.

Officer Francesconi spoke with a woman who resided at 6543 Northwest Highway. The officer learned that the woman had called the police because someone had been jiggling the back door of her apartment. The intruder did not gain entry into the woman's apartment.

Officer Francesconi proceeded to the street where defendant had been

stopped and arrested by other officers. On direct examination Officer Francesconi testified that one of the other officers said, "We got a gun out of the car, is this a bona fide burglary?" Officer Francesconi responded that "The people said no, it was not a bona fide burglary, it was just an attempt." The court sustained defendant's objection to the question which elicited this testimony and later instructed the jury to disregard the answer. The court denied defendant's motion for a mistrial.

Once a police squadrol arrived at the arrest scene Officer Francesconi escorted the defendant to the squadrol. Officer Francesconi testified that when the defendant was asked why he was profusely sweating on a cool night, the defendant replied, "You'd be sweating if you were in my shoes." No objection was raised by the defendant to this portion of Officer Francesconi's testimony.

Officer Philip Onesto corroborated the testimony of Officer Francesconi pertaining to the events surrounding the arrest of defendant. Officer Onesto stated that a .22-caliber 9-shot revolver was found protruding out from underneath the front seat of the driver's side of defendant's automobile.

James Sesso, an investigating officer for the Chicago Police Department, testified that he saw defendant in custody at the 16th District Station during the early morning of August 27, 1970. Officer Sesso determined at the time that defendant resided in Wheeling, Illinois, approximately 5 miles from the 6500 block of Northwest Highway. Officer Sesso stated that defendant, without being questioned, commented, "I should have never gone back to the Highway." On cross-examination Officer Sesso testified that fingerprints taken from the kitchen window and kitchen door of complainant's apartment were not suitable for comparison.

A second woman testified that on July 18, 1970, at approximately 1 a.m. she was watching television in an upstairs bedroom of her townhouse located at 6265 Northwest Highway. Alarmed by the barking of her dog, the woman walked downstairs to the living room area. She was met by a man with a gun whom she identified as the defendant. The woman screamed; defendant told her that if she screamed again he would shoot her. Defendant forced the woman to walk upstairs to the bedroom, undress herself, and lie on the bed. The defendant then performed the act of intercourse.

The woman testified that she clearly saw the defendant's face in the light of the living room lamp at the time she first encountered him. The woman also stated that she looked directly into defendant's face at a distance of 2 or 3 inches during the act of intercourse. Light emitted from the bedroom television enabled the woman to discern the facial features of the defendant. The woman further identified the gun which defendant

possessed at the time of his arrest as similar to the gun which he held in the woman's apartment on July 18, 1970.

Defendant remained in the woman's apartment for approximately 15 minutes. Before he exited through the rear door of the townhouse defendant took $4 in currency from the woman's purse which had been placed on the kitchen counter. Defendant had gained entry to the townhouse by removing a screen of a kitchen window which is adjacent to the kitchen door. The woman's townhouse is located five blocks from the complainant's apartment building and three blocks from the apartment building in which defendant allegedly attempted to gain entry on the night of his arrest. Over defendant's objection the court allowed the State to introduce the second woman's testimony for the purpose of demonstrating common scheme or design.

The defendant testified in his own behalf. He stated that on the night of August 19-20, 1970, he stayed at his home in Wheeling, with a friend, Georgia Schmidt. At the time both defendant and Georgia Schmidt were not divorced but they were separated from their respective spouses. Georgia Schmidt was married to James Nolton at the time. The defendant testified that he and Georgia Schmidt left his home at approximately 6 a.m. on August 20, 1970. From his home defendant traveled to his place of employment. Defendant denied that he raped complainant or that he committed deviate sexual assault on her.

Defendant further testified that on July 17, 1970, he visited James Nolton who was a patient at Grant Hospital. Another woman who later testified at trial by the name of Margaret Nolton was also present in the hospital room. Margaret Nolton was the wife of James Nolton at the time of trial; however, they were not married on July 17, 1970. Later in the evening at approximately 10:30 p.m. Margaret Nolton met the defendant at a bar in Old Town for the purpose of giving him child support money which James Nolton owed his wife at the time, Georgia Schmidt. Defendant was to transfer the child support money to Georgia Schmidt. Margaret Nolton stayed at the bar with defendant until 1:20 a.m. Defendant stated that he remained at the bar to shoot pool until 2:30 a.m. Defendant testified that he did not rape the second woman on July 18, 1970. Defendant further testified that on July 18, 1970, his .22-caliber revolver was in the possession of his separated wife, Ruth Therriault.

Prior to the time of his arrest on August 26, 1970, defendant claimed that he had consumed approximately 12 or 13 scotch and soda drinks at several different bars. Defendant departed Corrado's Restaurant located in Arlington Heights at approximately 12:30 a.m. Defendant testified that he decided to drive directly to his place of employment rather than proceed to his home because he feared that he would sleep through the morning hours. As he was driving along Northwest Highway on route to

his place of employment, defendant stopped his automobile and ducked behind a building to urinate. Once he returned to the Highway, he was curbed by a marked police car and ticketed for driving without a license and for "spinning his tires." Defendant was not ticketed for driving his automobile while under the influence of alcohol. Defendant stated that he placed the .22-caliber revolver under the seat of his automobile on August 15, 1970, when his wife returned the gun to him. On cross-examination defendant testified that he owns the gun for the purpose of hunting rodents and that he did not have the gun in his hand when he returned to his automobile from the building on the Northwest Highway. Defendant further testified on cross-examination that a pair of gloves were in his automobile on the night of his arrest.

Georgia Schmidt corroborated the testimony of the defendant. She testified that she had been intimate with defendant for as long as four or five months prior to August 20, 1970. On the evening of August 20, 1970, she arrived at defendant's home at approximately 6 p.m. and subsequently departed early the next day at about 6 a.m. On cross-examination Georgia Schmidt testified that she had been married four times and that one of her previous husbands was the defendant's brother. She further stated that she no longer associates with defendant.

Ruth Therriault testified that she and defendant were separated in May, 1970, and subsequently divorced in February, 1971. She stated that on August 15, 1970, she returned a .22-caliber revolver to defendant at her home. She had possession of the gun for the purpose of protecting herself and her two daughters.

James Nolton and Margaret Nolton both testified that defendant visited James Nolton at Grant Hospital on July 17, 1970. James Nolton stated that he arranged a meeting between Margaret Nolton and defendant for the purpose of transferring child support money to Georgia Schmidt. Margaret Nolton stated that she met defendant at a bar in Old Town at approximately 11 p.m., gave money to the defendant, and left at about 1:15 a.m. Prior to July 17, 1970, Margaret Nolton had never known the defendant.

Officer Robert Francesconi testified in rebuttal that on August 27, 1970, at approximately 2 a.m., defendant was not intoxicated when he was stopped by the police. Neither Officer Francesconi nor any other police officer issued a traffic violation ticket to defendant for driving while under the influence of alcohol. Officer Francesconi stated that on August 27, 1970, a Martin Gas Station, three taverns, and a restaurant, all housing men's rest rooms, were open at the time defendant was arrested. Officer Francesconi further testified that at approximately 3 p.m. on August 27, 1970, Ruth Therriault identified the .22-caliber revolver as defendant's gun at the 16th District Police Station.

The gloves which were recovered from defendant's automobile on the night of his arrest were introduced into evidence at the close of the State's rebuttal testimony. In surrebuttal, Ruth Therriault testified that she purchased the defendant's gloves along with a matching pair for herself. However, Ruth Therriault was not permitted to testify in surrebuttal that during 12 years of marriage she observed that defendant always acted normally when he was intoxicated.

Defendant submitted a motion for a new trial alleging that he was not proved guilty beyond a reasonable doubt; that it was error to admit the second woman's testimony demonstrating common scheme or design; and that it was error to refuse an alibi instruction submitted by defendant.

We turn to a consideration of defendant's contention that the line-up from which he was identified was unnecessarily suggestive. Defendant points out that the complaining witness testified that the rapist was wearing a cardigan sweater at the time of the crime. He argues that the complaining witness was led to identify him because he was the only suspect in the line-up wearing a cardigan sweater. Defense counsel at trial did not challenge the line-up procedures with a motion to suppress.

■■ Photographs of the line-up reveal that the four men in the line-up were similar in their height, weight, and hair color. The police did not communicate in any suggestive manner with the complaining witness prior to the time she viewed the line-up. The police did not coerce defendant to wear the sweater at the line-up; the sweater was part of defendant's apparel when he was arrested. Moreover, the complainant had adequate opportunity to observe and identify her assailant on the morning of the rape. She was able to face her assailant directly and intimately under adequate artificial light for approximately eight minutes. The description which she gave to the police included age, race, height, build, hair color, facial features, and clothing. The description is more than an ordinarily thorough characterization of the defendant. Nothing in the record indicates that the complainant was less than fully attentive to her assailant's features. The complainant's in-court identification of the defendant was positive and unequivocal. The fact that defendant was wearing a sweater at the line-up was not so suggestive as to give rise to a substantial likelihood of irreparable misidentification. (*Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967; *People v. Pagan*, 52 Ill. 2d 525, 288 N.E.2d 102.) The record clearly indicates that the complainant's in-court identification of defendant as her assailant was independent of any improper influence arising from any pretrial identification procedure. *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819; see *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

■■ Defendant's second contention is that he was not proved guilty beyond a reasonable doubt. He argues that the alibi testimony presented

by himself and by three other witnesses creates a reasonable doubt of his guilt. He further argues that the complainant's identification testimony is inherently suspect because she failed to describe elbow patches which were sewn onto his sweater.

The testimony of one witness, who had ample opportunity to form a positive identification, is sufficient to convict even though such testimony is contradicted by the accused. (*People v. Stringer*, 52 Ill. 2d 564, 289 N.E.2d 631.) The trier of fact does not have an obligation to believe alibi testimony over positive identification of an accused, even though the alibi testimony may be presented by a greater number of witnesses. (*People v. Catlett*, 48 Ill. 2d 56, 268 N.E.2d 378.) As the record demonstrates, the complainant's identification of defendant as her assailant is positive. The complainant had ample opportunity to observe and identify her assailant. (See *People v. Clarke*, 50 Ill. 2d 104, 277 N.E.2d 866.) The record reflects inconsistencies and improbabilities in the testimony of the alibi witnesses. The weight of the evidence and the credibility of witnesses are questions for the jury to resolve. We will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt. (*People v. Mills*, 40 Ill. 2d 4, 237 N.E.2d 697.) After a careful review of the record, we find the evidence sufficient to support the convictions. There is no reason to interfere with the verdict.

■■ Defendant next contends that it was error to admit testimony of a second woman demonstrating a common scheme or design. Defendant argues that the similarities attendant to the two rapes are not so peculiar and distinctive as to evidence a common scheme or design in the commission of the two crimes.

In *People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489, our supreme court held that a prosecution witness could testify that she experienced an attack similar in nature to the attack experienced by the complainant. As in the present case, the witness and complainant identified the defendant in *McDonald* as their assailant. Both incidents in *McDonald* resulted in two separate burglary convictions for the defendant. The common characteristics of the two separate attacks in *McDonald* were more general in nature than the similarities inherent to the incidents of rape found in the present case. The supreme court held that the testimony of the prosecution witness was relevant to demonstrate the *modus operandi* of the defendant in the commission of both crimes. The court enunciated the applicable general rules by stating (62 Ill. 2d 448, 455):

> "It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has

committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. (*People v. Lehman*, 5 Ill. 2d 337, 343; *People v. Palmer*, 47 Ill. 2d 289, 296; *People v. Kovacivich*, 10 Ill. App. 3d 797.) In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. *People v. Dewey*, 42 Ill. 2d 148, 157; *People v. Cole*, 29 Ill. 2d 501, 503." See *People v. Middleton*, 38 Ill. App. 3d 984, 350 N.E.2d 223; *People v. Cruz*, 38 Ill. App. 3d 21, 347 N.E.2d 227.

In the present case, the rape of the second woman and the rape of the complainant indicate significant similarities in character which evidence a common *modus operandi* in the commission of both crimes. Both rapes occurred in similar apartment buildings located on the east side of Northwest Highway within five blocks of each other. Entry in both instances was made through the kitchen window of ground floor apartments. The same type of weapon was used to threaten each rape victim. The women were ushered into their bedrooms where they were raped. The defendant initiated both attacks in the early morning hours and the duration of each attack was approximately 15 minutes. As he was leaving each apartment through the kitchen, defendant stole money from the purse of each woman. Both women identified defendant as their assailant. Both rapes occurred within one month of each other. The time span between incidents is only one of many circumstances to consider in determining whether the evidence showed a common scheme or design. *People v. Emmett*, 34 Ill. App. 3d 167, 340 N.E.2d 235.

We conclude that it was not improper to admit the testimony of the second woman. Common to both rapes are "peculiar and distinctive features" which evidence a distinguishable *modus operandi* on the part of the defendant. (*People v. Lehman*, 5 Ill. 2d 337, 343, 125 N.E.2d 506; *People v. Scott*, 4 Ill. App. 3d 279, 280 N.E.2d 715.) The evidence reveals an identical method or design common to both rape occurrences so as to earmark the crimes as the handiwork of the accused. (*People v. Emmett*, 34 Ill. App. 3d 167, 340 N.E.2d 235; McCormick on Evidence §190, at 449 (2d ed. 1972).) We further note that the trial court informed the jury of the limited purpose of the second woman's testimony. Moreover, the trial court instructed the jury with IPI Criminal No. 3.14 that the second woman's testimony was to be considered for the limited purpose for which it was received. *People v. Nelson*, 17 Ill. App. 3d 224, 308 N.E.2d 122.

■■ Defendant next contends that Supreme Court Rule 451(a) (Ill. Rev. Stat. 1969, ch. 110A, par. 451(a)) constitutes an improper exercise of

the Supreme Court's rule-making power. Defendant argues that Rule 451(a) incorporates the committee recommendation in IPI Criminal No. 24.05 that no instruction on the subject of alibi be given. Defendant further argues that Rule 451(a), by incorporating IPI Criminal No. 24.05, changes the "substantive law" that a defendant is entitled to have the jury instructed on any legally recognized defense theory applicable to the facts presented. Defendant offered two separate alibi instructions at trial; both instructions were refused over objection on the basis of the committee recommendation.

Defendant's contention, raised for the first time on appeal, is without merit. Our supreme court in *People v. Callopy*, 358 Ill. 11, 192 N.E. 634, held that it had inherent power to formulate rules of practice governing the mode of instruction to juries in criminal cases. (See Historical and Practice Notes, Ill. Ann. Stat., ch. 110A, par. 451 (Smith-Hurd 1968).) Proof of an alibi is not proof of an affirmative defense; proof of an alibi is only one method of countering the prosecution's case. (*People v. Pearson*, 19 Ill. 2d 609, 169 N.E.2d 252.) The *Pearson* decision is the basis of the committee recommendation in IPI Criminal No. 24.05 that no instruction on the subject of alibi be given. The committee recommendation in IPI Criminal No. 24.05 has been approved as a valid practice by our supreme court. (*People v. Poe,* 48 Ill. 2d 506, 272 N.E.2d 28.) Defendant's argument does not convince us that any particular "substantive" criminal law is changed by the adoption of IPI Criminal No. 24.05 by Rule 451(a). (See *Busik v. Levine* (1973), 63 N.J. 351, 307 A.2d 571.) Constitutional and statutory investiture of rule-making power in the supreme court mandates a holding that promulgation of Rule 451(a) is valid. Ill. Const. 1970, art. VI, §1; Ill. Rev. Stat. 1969, ch. 110, par. 2.

■■ Defendant's fifth contention is that he was denied effective assistance of counsel. Defendant's trial counsel maintained in closing argument that the line-up procedure was suggestive; however, he did not present a motion to suppress any of the complainant's identification testimony. Defendant argues on appeal that his trial counsel's failure to submit a motion to suppress constitutes incompetence warranting reversal on remand.

In *People v. Dudley*, 46 Ill. 2d 305, 263 N.E.2d 1, our supreme court found that counsel's failure to file a motion to suppress evidence obtained through defendant's volunteered statements did not constitute neglect of counsel. In *Dudley*, the court reasoned that a motion to suppress would have been fruitless because the defendant volunteered statements without threat or coercion.

As we have previously found, the line-up procedures in the present case were not suggestive. A motion to suppress any of the complainant's identification testimony would be without merit. Defendant's trial counsel

did not demonstrate actual incompetence without which the jury's verdict would have been different. *People v. Goerger*, 52 Ill. 2d 403, 288 N.E.2d 416.

■■ Defendant's sixth contention is that it was error to deny a motion to produce scientific data in the hands of the Chicago Police Department, a copy of a composite drawing of defendant, and copies of all photographs of each scene of the crimes set forth in the indictments against defendant. Defendant also argues under this contention that it was error to deny a bill of particulars requesting information about the *modus operandi* of the crimes set forth in the indictments against the defendant and the *modus operandi* of other rapes which allegedly were committed in the same area along Northwest Highway. We must note that these arguments are being presented for the first time on appeal.

The record discloses that the State released information regarding spermatozoa tests conducted by Bernadette Kwak, who testified at trial. The State also disclosed the fact that photographs of the scenes of the crime were in its possession and available for inspection. Defendant does not specify how any further examination of the State's files would have disclosed impeaching evidence. We cannot find any prejudice resulting to defendant by the denial of the submitted motion to produce. *People v. Anderson*, 48 Ill. 2d 488, 272 N.E.2d 18.

■■ We further conclude that the motion for a bill of particulars was properly denied. The indictment against defendant was sufficient. A defendant is not entitled to request a general disclosure of evidence through a motion for a bill of particulars. The trial court did not abuse its discretion in denying defendant's motion for a bill of particulars. *People v. Decker*, 19 Ill. App. 3d 86, 311 N.E.2d 228.

■■ The defendant's seventh, eighth, ninth, tenth, and eleventh contentions relate to evidentiary rulings made at trial. These contentions were not raised in the written motion for a new trial filed by defendant's counsel who represented defendant at trial. We do not believe that the evidence in this case is closely balanced. We therefore find that since these were not raised in the motion for a new trial, they are waived on appeal. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Killebrew*, 55 Ill. 2d 337, 303 N.E.2d 377; *People v. Crosby*, 39 Ill. App. 3d 1008, 350 N.E.2d 805.) We will, however, briefly address the merits of each contention.

■■ Defendant's seventh contention is that it was prejudicial for Officer Francesconi to testify that defendant had attempted to burglarize a building on the night he was arrested. As we noted in our account of the facts, the trial court sustained defendant's objection to the unanticipated testimony of Officer Francesconi. Moreover, the jury was later instructed to disregard all stricken testimony. The error was cured and there was no

prejudicial effect. *People v. King*, 29 Ill. 2d 150, 193 N.E.2d 790; *People v. Machul*, 387 Ill. 556, 56 N.E.2d 811.

■■ Defendant's eighth contention is that it was prejudicial error to admit into evidence a pair of gloves found in the possession of the defendant at the time of his arrest. The gloves are relevant if evidence connects the gloves to the defendant and the crime. (*People v. Jones*, 22 Ill. 2d 592, 177 N.E.2d 112.) On cross-examination, James Sesso testified that the kitchen window and the kitchen door of complainant's apartment were not suitable for comparison. The gloves were discovered in defendant's possession one week after the crime during the summer month of August. The record indicates a sufficient basis for the trial court's decision that the gloves were relevant and therefore admissible. We see no abuse of discretion to the prejudice of the defendant.

■■ Defendant's ninth contention is that part of Officer Francesconi's rebuttal testimony was improperly received into evidence. Officer Francesconi stated in rebuttal that defendant was not intoxicated at the time of his arrest. This part of the officer's rebuttal testimony amounted to impeachment of defendant's testimony on a collateral matter, and the trial court erred in admitting it over defendant's objection. However, the trial court's error is not sufficiently prejudicial to require reversal of the conviction. *People v. Dennis*, 47 Ill. 2d 120, 265 N.E.2d 385.

Defendant's tenth contention is that the trial court should have permitted Ruth Therriault to testify in surrebuttal that during 12 years of marriage she observed that defendant always acted normally when he was intoxicated. Ruth Therriault's general knowledge of the defendant's conduct while under the influence of alcohol was immaterial to the question of whether or not defendant had been drinking on the night of his arrest. The trial court did not abuse its discretion in refusing to admit the proffered surrebuttal testimony. See *People v. Carbona*, 27 Ill. App. 3d 988, 327 N.E.2d 546.

The eleventh contention presented by defendant is that prejudice resulted to defendant when the prosecutor in closing argument stated, "I believe that we have convinced you beyond a reasonable doubt, in spite of all the alibi, that Mr. Therriault is a burglar and a rapist." Defendant argues that the reference to the crime of burglary was prejudicial. The trial court sustained defendant's objection to the statement, and further instructed the jury to disregard the prosecutor's remark. The error was cured; moreover, an examination of the record does not reveal that the comment constituted a material factor in the conviction. *People v. Dukett*, 56 Ill. 2d 432, 308 N.E.2d 590; see *People v. Nichols*, 17 Ill. App. 3d 871, 308 N.E.2d 848.

■■ Defendant next contends that the mandatory parole term provided by section 5—8—1(e) of the Unified Code of Corrections (Ill.

Rev. Stat. 1973, ch. 38, par. 1005—8—1(e)) is unconstitutional. Our supreme court in *People v. Wills*, 61 Ill. 2d 105, 330 N.E.2d 505, held that the issue of the constitutionality of the statute in question is not ripe for decision until parole has actually been revoked. Defendant's contention is not properly before us for review.

■■ Defendant lastly contends that the period of 20 to 60 years' imprisonment is excessive. Defendant has a prior criminal record. Terms of imprisonment equivalent to the term sentenced to defendant for the same convictions have been upheld. (*People v. Smith*, 19 Ill. App. 3d 138, 310 N.E.2d 818.) The trial judge had the benefit of observing defendant at trial, examining the presentence investigation report, and receiving all arguments during the hearing in aggravation and mitigation. Our power to reduce sentences should be used with caution and circumspection. (*People v. Caldwell*, 39 Ill. 2d 346, 236 N.E.2d 706.) In this case, caution stays our hand.

For these reasons the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.